## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

### APPEAL CASE NO. 21-14177-AA

---

### ISMETA KADRIBASIC,
Appellant / Plaintiff

**v.**

### WAL-MART, INC.,
Appellee / Defendant

---

On Appeal from the United States District Court
For the Northern District of Georgia, Atlanta Division

DISTRICT COURT CIVIL ACTION NO:  1:19-cv-03498-SDG

---

### BRIEF OF APPELLEE WAL-MART, INC.

---

Elissa B. Haynes
Georgia Bar No. 804466
HaynesE@deflaw.com
Meredith R. Guerrero
Georgia Bar No. 214274
MGuerrero@deflaw.com
DREW ECKL & FARNHAM, LLP
303 Peachtree Street, NE, Suite 3500
Atlanta, GA 30308
Telephone: (404) 885-1400
Facsimile: (404) 876-0992

*Counsel for Defendant/Appellee*

USCA11 Case: 21-14177-AA; Ismeta Kadribasic v. Wal-Mart, Inc.

## Certificate of Interested Persons and Corporate Disclosure Statement

Pursuant to F.R.A.P. 26.1, 11th Cir. R. 26.1, and 11th Cir. R. 28-1(b), Appellee Walmart Inc.[1] respectfully notifies the Court that the certificate of interested persons filed by Appellant Ismeta Kadribasic is incomplete. The following is a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case, including subsidiaries, conglomerates, affiliates, and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

**Bly, Christopher C., Magistrate Judge, United States District Court for the Northern District of Georgia**

**Burke, Julie H. of Hill, Kertscher & Wharton, LLP, attorney for appellant herein**

**Day, Alison M. of Littler Mendelson, P.C., prior attorney for appellee herein**

**Drew Eckl & Farnham, LLP, attorney for appellee herein**

**Frye, Blake H. of Hill, Kertscher & Wharton, LLP, attorney for appellant herein**

**Gibson, Jacob Sterling of Littler Mendelson, prior attorney for appellee herein**

**Grimberg, Steven D., District Court Judge, United States District**

---

[1] Walmart Inc. is the correct legal name for the entity that Plaintiff names as Wal-Mart, Inc. in her lawsuit and in this appeal.

USCA11 Case: 21-14177-AA; Ismeta Kadribasic v. Wal-Mart, Inc.

**Court for the Northern District of Georgia**

**Guerrero, Meredith Riggs of Drew Eckl & Farnham, LLC, attorney for appellee herein**

**Haynes, Elissa B., of Drew Eckl & Farnham, LLC, attorney for appellee herein**

**Hill, Kertscher & Wharton, LLP, attorneys for appellant herein**

**Kadribasic, Ismeta, appellant herein**

**Kertscher, Douglas R. of Hill, Kertscher & Wharton, LLP, attorney for appellant herein**

**Littler Mendelson, P.C., prior attorneys for appellee herein**

**Lott, Joshua M., formerly with Littler Mendelson, P.C. prior attorney for appellee herein**

**Pope, Benson Edward of Littler Mendelson, P.C., prior attorney for appellee herein**

**Walmart Inc. (NYSE: WMT) (Defendant/Appellee)**

USCA11 Case: 21-14177-AA; Ismeta Kadribasic v. Wal-Mart, Inc.

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Appellee certifies that there is no parent corporation or any publicly held company that owns 10% or more of its common stock.

## **<u>Statement Regarding Oral Argument</u>**

Pursuant to Rule 28-1(c) of the 11th Circuit Rules, Appellee states that oral argument is not warranted. The arguments are well-briefed, and this case does not involve any novel or unsettled issues of law.

# Table of Contents

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
 DISCLOSURE STATEMENT....................................................................C-1

CORPORATE DISCLOSURE STATEMENT .....................................................C-3

STATEMENT REGARDING ORAL ARGUMENT .............................................i

TABLE OF AUTHORITIES ...........................................................................iv

I.    Statement of the Issues ....................................................................1

II.   Statement of the Case .....................................................................1

      A.    Course of Proceedings and Disposition ................................1

      B.    Statement of Facts ...............................................................3

            1.    Angela Taylor Begins Supervising Kadribasic and
                  Observes Numerous Deficiencies in her Management
                  of the Duluth Club...................................................4

            2.    Kadribasic's Return to Work and Ongoing Failures to
                  Comply with Company Policy..................................7

            3.    Kadribasic's Failure to Prepare the Duluth Club for its
                  Nationwide Sales Event ...........................................8

      C.    Standard of Review ...........................................................10

III.  Summary of the Argument ...........................................................11

IV.   Argument and Citation of Authority ............................................12

      A.    The District Court Correctly Dismissed Kadribasic's FMLA
            Claim Because Kadribasic was not Entitled to FMLA Leave
            at the Time Walmart Decided to End Her Employment....................12

      B.    Kadribasic Did Not Identify an "Unusual Circumstance" That
            Prevented Her from Complying with Walmart's Policy for
            Requesting Leave ...............................................................19

      C.    Walmart Did Not Waive its Longstanding Policy for
            Requesting Leave ...............................................................24

D.  Walmart Did Not Interfere with Any Right Kadribasic May Have Had Under the FMLA Because its Decision to Terminate Her Employment was Not Related to Any Alleged Request for Leave ................................................................................26

V.  Conclusion ..........................................................................................28

# Table of Authorities

**Page(s)**

**Cases:**

*Acker v. Gen. Motors, L.L.C.*,
  853 F.3d 784 (5th Cir. 2017) .............................................................. 18, 20, 21

*Aponte v. Brown & Brown of Fla., Inc.*,
  806 F. App'x 824 (11th Cir. 2020).....................................................28

*Carlson v. FedEx Ground Package Sys., Inc.*,
  787 F.3d 1313 (11th Cir. 2015) ........................................................10

*Crawford v. City of Tampa*,
  464 F. App'x 856 (11th Cir. 2012).....................................................14

*Depree v. Thomas*,
  946 F.2d 784 (11th Cir. 1991) ..........................................................23

*Flores v. Murphy Co.*,
  No. 1:12-cv-2156-CL, 2014 WL 584553 (D. Or. Feb. 12, 2014) ....................21

*Gay v. Gillman Paper Co.*,
  125 F.3d 1432 (11th Cir. 1997) ........................................................17

*Goff v. Singing River Health Sys.*,
  6 F. Supp. 3d 704 (S.D. Miss. 2014) ................................................14

*Irving v. Mazda Motor Corp.*,
  136 F.3d 764 (11th Cir. 1998) ..........................................................23

*Krutzig v. Pulte Home Corp.*,
  602 F.3d 1231 (11th Cir. 2010) ........................................................27

*Martin v. Brevard Cnty. Pub. Sch.*,
  543 F.3d 1261 (11th Cir. 2008) ........................................................12

*Ruark v. Arkansas Democrat-Gazette, Inc.*,
  No. 4:13-CV-00283-KGB, 2014 WL 1809606 (E.D. Ark. May 2, 2014) . 21, 22

*Srouder v. Dana Light Axle Mfg., LLC*,
  725 F.3d 608 (6th Cir. 2013) ...........................................................14

*Strickland v. Water Works & Sewer Bd. of the City of Birmingham*,
  239 F.3d 1199 (11th Cir. 2001) ........................................................ 12, 17, 26

iv

*Twigg v. Hawker Beechcraft Corp.*,
    659 F.3d 987 (10th Cir. 2011) ...........................................................14

*Uselton v. CSX Transp., Inc.*,
    No. 3:13-cv-349, 2014 WL 4388272 (N.D. Ohio Sept. 5, 2014).....................21

*Walker v. Jones*,
    10 F.3d 1569 (11th Cir. 1994) ...........................................................23


**Statutes & Other Authorities:**

28 U.S.C. § 1331 ...............................................................................1

29 U.S.C. § 2601 ...............................................................................1

29 U.S.C. § 2612(a)(1)(D) .................................................................12

29 U.S.C. § 2615(a)(1) .....................................................................12

42 U.S.C. § 12112 .............................................................................1

29 C.F.R. § 825.301(b) .....................................................................13

29 C.F.R. § 825.302(a) .....................................................................14

29 C.F.R. § 825.302(c) .....................................................................13

29 C.F.R. § 825.302(d) ............................................................... 14, 20

29 C.F.R. § 825.303 ................................................................. *passim*

29 C.F.R. § 825.303(a) .....................................................................26

29 C.F.R. § 825.303(c) ............................................................. *passim*

29 C.F.R. § 825.304 .........................................................................25

29 C.F.R. § 825.304(e) ........................................................... 24, 25, 26

73 Fed. Reg.  (Jan. 16, 2009) ...........................................................14

11th Cir. R. 28-1(b) ...........................................................................1

Fed. R. App. P. 26.1 ...........................................................................1

v

## I.    Statement of the Issues

The District Court granted Walmart's Motion for Summary Judgment as to Kadribasic's claim under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*. ("FMLA"), finding that appellant's FMLA claim failed as a matter of law because she did not establish that she was entitled to FMLA leave.

The issues for review by this Court are:

1.    Did the District Court correctly determine that Ismeta Kadribasic failed to meet her burden of proving that she was entitled to FMLA leave when Walmart decided to end her employment?

2.    Did the District Court correctly determine that Ismeta Kadribasic failed to meet her burden of proving Walmart interfered with her FMLA rights?

## II.    Statement of the Case

### A.    Course of Proceedings and Disposition

On August 2, 2019, Ismeta Kadribasic filed suit against Walmart in the United States District Court for the Northern District of Georgia, asserting federal question jurisdiction under 28 U.S.C. § 1331. Kadribasic's Complaint asserted claims under the Americans with Disabilities Act, 42 U.S.C. § 12112, *et seq.* (the "ADA") and the FMLA. Specifically, Kadribasic alleged that Walmart: (1) retaliated against her in violation of the ADA by terminating her employment after she allegedly engaged in activity protected by the ADA; (2) discriminated against her on the basis of an alleged disability in violation of the ADA; (3) failed to accommodate her alleged

disability in violation of the ADA; and (4) interfered with her rights under the FMLA by failing to provide her with her entitled twelve weeks of leave and by terminating her employment in violation of the FMLA.

Walmart moved for summary judgment as to each of Kadribasic's claims. Kadribasic likewise filed her own summary judgment motion. U.S. Magistrate Christopher Bly issued a 90-page Final Report and Recommendation (the "R&R") in which he recommended that Walmart's Motion for Summary Judgment be granted in its entirety. The Honorable Steven D. Grimberg ultimately granted Walmart's Motion for Summary Judgment as to Kadribasic's FMLA interference and ADA retaliation claims. (Doc. 132). Judge Grimberg denied Walmart summary judgment on Kadribasic's ADA discrimination and failure to accommodate claims and directed the parties to file their pretrial order as to those two claims.

With respect to Kadribasic's FMLA interference claim, Judge Grimberg held that Kadribasic could not establish that she was entitled to FMLA leave and that Walmart interfered with such leave because she: (1) failed to comply with Walmart's policy for requesting FMLA leave; and (2) did not produce evidence showing unusual circumstances that prevented her from complying with Walmart's policy. (Doc. 132, pp. 19-21).

In October 2021, Kadribasic's ADA discrimination and failure to accommodate claims were tried to a jury. During the course of the trial, Kadribasic

withdrew her ADA failure to accommodate claim. On October 28, 2021, the U.S. District Court entered judgment for Walmart on the sole remaining claim – the ADA discrimination claim. Kadribasic then filed her notice of appeal, only appealing the District Court's ruling that Walmart was entitled to summary judgment on her FMLA claim.

### B.    Statement of Facts

This lawsuit and subsequent appeal centers on Kadribasic's employment with Walmart, which began when she was hired as a part-time cashier in the Sam's Club in Snellville, Georgia, in 2003. (Doc. 95, p. 43, 47; Doc. 95-2, p. 10). In March 2017, Kadribasic began working as the Club Manager of the Sam's Club in Duluth, Georgia (the "Duluth Club"). (Doc. 95, pp. 53-54; Doc. 95-2).

The facts in the record show that Kadribasic struggled to perform the Club Manager duties. (Doc. 95, pp. 281-286; Doc. 96-1). In fact, her performance was insufficient for over a year before Walmart ultimately ended her employment in November 2018 (Doc. 96-1). In 2017 and 2018, the Developmental Market Manager who supervised Club Managers and Assistant Managers, including Kadribasic, noticed consistent issues with lack of cleanliness and below standard merchandise stocking conditions and regularly provided Kadribasic with informal coaching and counseling. (Doc. 107-3, pp. 2-5). In Kadribasic's Fiscal Year 2018 Annual Performance Evaluation, which evaluated her performance from February 2, 2017

to January 31, 2018, the first year she worked as the Club Manager at the Duluth Club, Kadribasic received the next to lowest overall performance rating possible: "Development Needed." (Doc. 95, pp. 286-287; Doc. 96-1, p. 13; Doc. 107-3, pp. 5, 7, 16-21). Kadribasic also received several "below expectations" ratings on her Fiscal Year 2017 Annual Performance Evaluation and, in the Section Comments, Bryan Lowe noted that she needed "to continue to focus on training and address performance issues in the [Duluth] Club." (Doc. 95, p. 285; Doc. 96-1, pp. 6-7; Doc. 107-3, p.3).

In February 2018, the company's Regional Vice President Steve Schrobilgen visited the Duluth Club along with Market Managers Chaneta Sullivan and Brian Keith Lowe. (Doc. 107-3, p. 5). Schrobilgen noted that the Duluth Club did not meet Company standards with respect to cleanliness, merchandise stocking, and a poor front-end member experience. (Doc. 107-3, p. 5). Kadribasic admits that Company management gave her poor reviews on at least two occasions when they visited the Duluth Club. (Doc. 95, pp. 303-304, 306-307).

### 1. Angela Taylor Begins Supervising Kadribasic and Observes Numerous Deficiencies in her Management of the Duluth Club

In April 2018, Angela Taylor became the Atlanta-area Market Manager for Market 93, the area in which the Duluth Club is located, and Kadribasic's direct supervisor. (Doc. 107-3, p. 3; Doc. 97, p. 12). The duties of a Market Manager

include walking or touring Clubs in the Market area to evaluate how effectively the Club Manager is managing the flow of inventory and whether the Club is being operated in accordance with Sam's Club's "First Five" standards. (Doc. 107-3, pp. 2-4).

On April 20, 2018, Taylor visited the Duluth Club to meet with Kadribasic for the first time and assess the club's status. (Doc. 95, pp. 291-292; Doc. 95-20, pp. 33, 35). Despite Kadribasic having advance notice of the visit, it appeared to Taylor that Kadribasic had undertaken no effort to prepare the store for assessment. (Doc. 96-2). Taylor observed trash in the parking lot and inside the store, and that the "claims cage" was disorganized. (Doc. 95, pp. 293-294, 304-305). Employees working at the Duluth Club told Taylor that they did not know that the Company had a directive explaining how the claims cage was to be organized. (Doc. 95-20, pp. 31-32, p. 34; Doc. 95, pp. 294). When Taylor mentioned these issues, Kadribasic responded with a series of excuses. (Doc. 95, pp. 294-297). Right after her visit, Taylor issued Kadribasic a First Written Coaching because of the unsatisfactory condition of the Duluth Club. (Doc. 95, p. 292; Doc. 95-20, p. 35; Doc 96-2). Kadribasic admits that she assumed, at that point, that she was at risk of losing her job. (Doc. 95, p. 311).

On June 27, 2018, the employee tasked with opening the Duluth Club arrived to find the doors unlocked. (Doc. 95, pp. 316-317; Doc. 96-7; Doc. 112-2, p. 4). The

associate immediately notified Market Asset Protection Manager Darrell Stinson. (Doc. 112-2, p. 4). Stinson investigated and determined that Kadribasic had failed to lock the doors on the night of June 26, 2018, leaving the Duluth Club unlocked from 10:30 p.m. until the following morning. (Doc. 112-2, p. 4; Doc. 97, p. 100-102). Stinson notified Taylor and provided her with photographs showing Kadribasic leaving the Duluth Club without locking the doors – an egregious violation of her duties as Club Manager. (Doc. 112-2, pp. 4, 7).

Kadribasic knew that her actions would lead to a Second Written Coaching. (Doc. 97-4; Doc. 97-5, p. 9). But Kadribasic tried to dodge the disciplinary action by making herself scarce when Taylor came to the Club. (Doc. 97, p. 94). Taylor tried to deliver the written coaching to Kadribasic three times between June 30 and July 10, 2018, but each time, Kadribasic was absent from the Duluth Club even though she was scheduled to work. (Doc. 97, pp. 94-96, 109-110, 247-248).

On July 10, 2018, Kadribasic signed a statement admitting her failure to lock the Club's doors. (Doc. 96-7, p. 8). Two days later, on July 12, after seeing her doctor on her lunch break, Kadribasic began her maternity leave early. (Doc. 95, p. 197, 207). At that time, Kadribasic decided to take paid time off ("PTO") from July 12, 2018, until July 30, 2018, when she was scheduled to begin FMLA maternity leave. Doc. 95, pp. 197, 207).

Following company policy, Kadribasic contacted Sedgwick, Walmart's Third-Party Leave Administrator, to request FMLA maternity leave from July 30, 2018 to October 7, 2018. (Doc. 95, pp. 329; Doc. 96-10). Kadribasic's request was granted on August 1, 2018. (Doc. 96-10). Kadribasic requested and was granted FMLA leave at least four times during her employment with Walmart. (Doc. 95, p. 95-96). Also, Kadribasic admits that not one of her requests for FMLA maternity leave was ever denied. (Doc. 95, pp. 95-96, 137).

### 2.    Kadribasic's Return to Work and Ongoing Failures to Comply with Company Policy

As of October 9, 2018, Kadribasic had two weeks of FMLA leave remaining and two weeks of accrued PTO. (Doc. 95, p. 232). Although Kadribasic could have remained on FMLA for two more weeks, she voluntarily returned to work on October 9, 2018. (Doc. 95, p. 231).

Kadribasic claimed she injured her back at work around 7:00 a.m. on October 18, 2018, when she bent down to push a pallet into place. (Doc. 95-29). Despite speaking to Taylor the same day as her injury, Kadribasic chose not to take that opportunity to report the injury. (Doc. 96-21, pp. 30-31). Kadribasic likewise continued to work the next two days without reporting it to Taylor or any other person at a higher level. (Doc. 95, pp. 264; Doc. 97, pp. 254-255).

It is undisputed that Kadribasic did not report her injury to her supervisor until October 21, 2018, when she emailed Taylor and Stinson stating that she had gone to

the emergency room for the injury she had sustained three days earlier. (Doc. 95, pp. 263-264; Doc. 95-31). Kadribasic also failed to ensure that the injury was keyed into Walmart's Incident Report System within 24 hours, in violation of Walmart's Associate Work-Related Injury Policy, which states that injuries, whether or not they require medical attention, must be keyed into the Incident Report System no more than 24 hours after the injury or the time management first learns about an associate seeking medical treatment. (Doc. 95-13, p. 1-2). Despite her awareness of these policies, Kadribasic did not comply with the requirements of the Associate Work-Related Injury Policy until three days later. (Doc. 95, pp. 98-100, 263-264).

### 3.    Kadribasic's Failure to Prepare the Duluth Club for its Nationwide Sales Event

On November 10, 2018, the Company held a One Day Sale at all of its clubs nationwide. (Doc. 95, p. 353; Doc. 97, p. 187; Doc. 102, p. 45). This was an important event that required significant planning and preparation by the Club Managers. (Doc. 95, pp. 354; 365-366; Doc. 97, p. 190; Doc. 101, pp. 114; Doc. 102, pp, 23-36; Doc. 92, p. 29). Kadribasic, however, abandoned her responsibilities and failed to report to work the day before the event. (Doc. 95, p. 382, 389). The morning before the event, Kadribasic texted Taylor that she was experiencing pain, but would "probably" be at work for the final preparations for the One Day Sale. (Doc. 95, p. 282; Doc. 96-21, p. 46). Kadribasic was not under any restriction that prevented her from working. (Doc. 95, pp. 278-280).

Taylor went to the Duluth Club on the morning of November 9, 2018. (Doc. 97, pp. 192). When Taylor arrived at the Duluth Club, she discovered that the club was entirely unprepared. (Doc. 97, pp. 159-160, 189-190, 208-209; Doc. 92, p. 59; Doc. 101, pp. 110-111, 117; Doc. 102, p. 53). Written plans for the event were nowhere to be found and none of the associates knew about the plans for the event or where the sale items were to be placed. (Doc. 96-23; Doc. 97, p. 159-160, 189, 204-205, 208-209; Doc. 101, pp. 114-115, 120). To ensure that the Duluth Club was ready for the event, Taylor enlisted three Club Managers from neighboring clubs to help get the Duluth Club ready in Kadribasic's absence. (Doc. 67-13, p. 21; Doc. 95, pp. 397, 398-399; Doc. 97, pp. 190-191, 206-209).

Because Kadribasic had failed to undertake the necessary preparations for the One Day Sale, at 12:55 p.m. on November 9, 2018, Taylor called the company's Field People Partner, Alejandro Munoz, to inform him that she planned to terminate Kadribasic's employment. (Doc. 97, p. 251). Munoz advised Taylor that he was in agreement with the termination. (Doc. 97, p. 251). Later that day, at 3:58 p.m., Kadribasic sent Taylor a text message asking if she would be opposed to Kadribasic taking one week of PTO. (Doc. 96-21, pp. 49-50). Kadribasic then sent Taylor a second text saying that she would not report to the Duluth Club that day. (Doc. 96-21, pp. 49-51). Taylor responded to Kadribasic suggesting that the two of them meet the following Monday to discuss. (Doc. 96-21, p. 51-52). Kadribasic later contacted

Sedgwick to request six weeks of "baby bonding" leave. (Doc. 95, pp. 415-416; Doc. 96-26).[2]

Despite her earlier conversation with Taylor, Kadribasic arrived unexpectedly at the Duluth Club that evening. (Doc. 67-13, p. 21; Doc. 95, p. 384-385). When she did, Taylor took the opportunity to administer a Third Written Coaching for failing to timely report her back injury. (Doc. 95, p. 401; Doc. 96-24; Doc. 112-2, p. 15). Taylor also informed Kadribasic that Walmart was ending her employment for failing to adequately perform her job duties based in part on her failure to ensure that the Duluth Club was prepared for the One Day Sale event. (Doc. 67-13, p. 21-22; Doc. 95, p. 401; Doc. 95-2, p. 5; Doc. 112-2, pp. 15-16). At the time Taylor informed Kadribasic of the termination of her employment, Taylor had no knowledge of Kadribasic submitting a request to Sedgwick for baby bonding leave. (Doc. 97, pp. 157-158; Doc. 96-26, p. 2).

### C.    Standard of Review

This Court reviews a district court's grant of summary judgment de novo. *See Carlson v. FedEx Ground Package Sys., Inc.*, 787 F.3d 1313, 1317 (11th Cir. 2015).

---

[2] Sedgwick confirmed receipt of Kadribasic's request for leave at 10:14 p.m. (Doc. 96-26, p. 2).

### III.    Summary of the Argument

The District Court properly granted Walmart's summary judgment motion, finding no questions of material fact existed as to Kadribasic's FMLA claim. The District Court properly held that Kadribasic failed to meet her burden of proving that she was entitled to leave when Walmart ended her employment. Kadribasic was admittedly aware of Walmart's policy for requesting FMLA leave, having complied with the policy multiple times during her Walmart career. But Kadribasic's request for the FMLA leave at issue here was not made until *after* her supervisor had decided to terminate her and *after* her supervisor had discussed the decision to terminate with the company Field People Partner, who concurred in the decision. (Doc. 97, p. 251; Doc. 95, pp. 415-416; Doc. 96-26). As noted in the District Court's Order, Kadribasic did not identify any unusual circumstances that would have prevented her from complying with Walmart's policy. The District Court likewise correctly held that even if she could establish that she were entitled to FMLA leave, Kadribasic failed to establish that Walmart interfered with any right she had under the FMLA, as the undisputed facts in the record establish that Walmart would have terminated Kadribasic's employment in any event because of her established performance issues.

Because Kadribasic failed to establish the basic elements of an FMLA interference claim, this Court should affirm the District Court's grant of summary judgment in Walmart's favor on Kadribasic's FMLA claim.

## IV.    Argument and Citation of Authority

### A.    The District Court Correctly Dismissed Kadribasic's FMLA Claim Because Kadribasic was not Entitled to FMLA Leave at the Time Walmart Decided to End Her Employment.

The District Court's decision should be affirmed because Kadribasic failed to establish a valid FMLA interference claim. The FMLA provides eligible employees the right to take up to twelve weeks of unpaid leave per year for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA also prohibits employers from interfering with, restraining, or denying "the exercise of or the attempt to exercise" any rights guaranteed under the Act. 29 U.S.C. § 2615(a)(1).

To state a claim for FMLA interference, an employee must establish, by a preponderance of the evidence, that: (1) she was entitled to FMLA leave; and (2) that her employer denied her that benefit. *Strickland v. Water Works & Sewer Bd. of the City of Birmingham,* 239 F.3d 1199, 1206-07 (11th Cir. 2001); *Martin v. Brevard Cnty. Pub. Sch.,* 543 F.3d 1261, 1266–67 (11th Cir. 2008) (citations omitted). Although an employee requesting FMLA leave need not expressly mention the FMLA, she must provide notice sufficient to make the employer aware of both the

need for qualifying leave and its anticipated timing and duration. 29 C.F.R. §§ 825.301(b) and 825.302(c).

The parties agree that Kadribasic's purported need for FMLA leave was unforeseeable. (Doc. 132, p. 16, n. 44; Brief of Appellant Ismeta Kadribasic, p. 10, n. 3). The regulations implementing the FMLA make clear that "when the need for leave is not foreseeable, an employee *must* comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.303(c) (emphasis added). The regulations also explain that "an employer may require employees to call a designated number or a specific individual to request leave" and, if the employee fails to "comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied." *Id*.

The language of 29 C.F.R. § 825.303 authorizing employers to require employees to comply with notice and procedural requirements for requesting leave was added to the regulations in January 2009. The final rules implementing these amendments to the FMLA-implementing regulations note:

> The Department [of Labor] recognizes that call-in procedures are a routine part of many workplaces and are critical to an employer's ability to manage its work force. Adherence to such policies is even more critical when the need for leave is unforeseen. Accordingly, the final rule in § 825.303(c) provides that, absent unusual circumstances, employees must comply with their employer's usual and customary notice and procedural requirements for requesting leave.

13

FMLA; Final Rule, 73 Fed. Reg. 68,009 (Jan. 16, 2009).

This Court and others throughout the United States have consistently held that the failure to comply with an employer's notice and procedural requirements leads to a determination that the employee is not entitled to FMLA-protected leave. In *Crawford v. City of Tampa*, 464 F. App'x 856 (11th Cir. 2012), this Court explained that when it is not practicable for an employee to provide her employer with advance notice of her need to take FMLA leave because the need for leave is unforeseeable, then an employee is required to provide her employer with notice as soon as practicable. *Id*. at 858 (citing 29 C.F.R. § 825.302(a)). However, "[a]bsent unusual circumstances, an employee must *also* comply with an employer's usual and customary notice and procedural requirements for requesting leave." *Id*. at 858-859 (citing 29 C.F.R. §§ 825.302(d) and 825.303(c))(emphasis added); *see also Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 614 (6th Cir. 2013) (29 C.F.R. § 825.303(c) "explicitly permits employers to condition FMLA-protected leave upon an employee's compliance with the employer's usual notice and procedural requirements, absent unusual circumstances."); *Twigg v. Hawker Beechcraft Corp*., 659 F.3d 987, 1009 (10th Cir. 2011) ("Formal notice-of-absence policies serve an employer's legitimate business interests in keeping apprised of the status of its employees and ensuring that it has an adequate workforce to carry out its normal operations."); *Goff v. Singing River Health Sys*., 6 F. Supp. 3d 704, 711 (S.D. Miss.

2014) (holding summary judgment is appropriate in an FMLA case without evidence of unusual circumstances excusing employee's failure to call employer timely).

Judge Grimberg correctly determined that Walmart was entitled to summary judgment on Kadribasic's FMLA interference claim because Kadribasic failed to show that she had a right to leave in the first place due to the fact that she had not complied with Walmart's policy for requesting FMLA leave at the time Walmart decided to terminate her employment.

Kadribasic alleges that she discussed or displayed her desire or need to take leave due to her alleged injury with Taylor on October 28, October 29, November 6, and November 8, 2018. The District Court, viewing the facts in a light most favorable to Kadribasic, determined that the identified communications were sufficient to create a fact question as to whether Taylor was aware of Kadribasic's need or desire to take FMLA leave. However, as Judge Grimberg explained in the Order, the Court's inquiry does not end there. (Doc. 132, p. 17). The regulations implementing the FMLA make clear that "when the need for leave is not foreseeable, an employee *must* comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.303(c) (emphasis added).

15

It is undisputed that Walmart's internal policy requires employees to notify its third-party administrator Sedgwick to request FMLA leave. The policy expressly states that employees "must contact Sedgwick to request a leave of absence." Kadribasic concedes that she was aware of this policy and indeed had successfully made use of it months before her termination. (Doc. 95, pp. 95-96, 137, 225-227). Specifically, in July 2018, Kadribasic had contacted Sedgwick about FMLA leave relating to maternity. (Doc. 95, pp. 329; Doc. 96-10; Doc. 97, p. 157). Leave was granted and Kadribasic was on FMLA leave from July 30, 2018 to October 7, 2018. (Doc. 96-10).

It is undisputed that Kadribasic did not contact Sedgwick between October 28 and November 8, 2018 to request FMLA leave. (Doc. 95, pp. 415-416; Doc. 96-26). On November 9, 2018, Taylor decided to terminate Kadribasic's employment and Munoz concurred with this decision during his 12:55 p.m. call with Taylor. It is undisputed that Kadribasic had not complied with Walmart's policy for requesting FMLA leave at that time, as she contacted Sedgwick sometime after 4:00 p.m. on November 9, 2018. (Doc. 95, pp. 415-416; Doc. 96-21, pp. 49-52; Doc. 96-26, p. 2). Kadribasic asks this Court to hold that her failure to follow Walmart's policy for requesting FMLA leave is irrelevant, but such a finding would directly contradict the plain language of 29 C.F.R. § 825.303. Pursuant to 29 C.F.R. § 825.303, Judge Grimberg correctly determined that Kadribasic was not entitled to FMLA leave at

16

the time the termination decision was made because Kadribasic had not complied with Walmart's policy for requesting FMLA leave at that time.

Kadribasic alleges in her appellate brief that Judge Grimberg erred by failing to follow this Court's findings in *Strickland v. Water Works & Sewer Bd. Of City of Birmingham*, 239 F.3d 1199 (11th Cir. 2001) and *Gay v. Gillman Paper Co.*, 125 F.3d 1432 (11th Cir. 1997) that when an employee's need for FMLA leave is unforeseeable, to be entitled to FMLA leave the employee need only provide her employer with notice sufficient to make the employer aware that her absence is due to a potentially FMLA-qualifying reason. Kadribasic alleges that this Court's decisions in *Strickland* and *Gay* establish that this Court "prohibits categorial rules concerning the content of an employee's adequate FMLA notice[.]" (Appellate Brief, p. 13).

*Strickland* and *Gay*, however, are not applicable to this matter because these cases predate the 2009 amendments to 29 C.F.R. § 825.303, which expressly permit employers to require employees to follow employer's usual and customary notice and procedural requirements for requesting leave. The *Strickland* and *Gay* opinions do not discuss the issue of whether an employee can reasonably be considered entitled to FMLA leave if the employee fails to follow the employer's established policy for requesting leave. Accordingly, Kadribasic's allegation that Judge

17

Grimberg should have denied Walmart summary judgment pursuant to the *Strickland* and *Gay* opinions is unfounded and should be disregarded.

This particular issue was addressed by the Fifth Circuit Court of Appeals in *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 790 (5th Cir. 2017). The factual circumstances in *Acker* were very similar to those in the instant matter. In determining that the plaintiff in *Acker* had failed to establish that he was entitled to FMLA leave because he had failed to comply with the employer's policy for requesting leave, the Fifth Circuit noted the material changes to the FMLA regulations that went into effect on January 16, 2009 that explicitly allow employers to condition FMLA leave on following the employer's policy. The Fifth Circuit held that the revised regulations were applicable and the plaintiff's reliance on case law that predated the 2009 amendments to 29 C.F.R. § 825.303 was misplaced because the holdings in each of those cases were "predicated on outdated, materially different regulations." *Id.* at 790.

Judge Grimberg properly granted Walmart summary judgment pursuant to the regulations that went into effect in January 2009. Pursuant to 29 C.F.R. § 825.303, Kadribasic was not entitled to FMLA leave at the time Walmart decided to end her employment because she had not complied with Walmart's policy for requesting leave.

**B.    Kadribasic Did Not Identify an "Unusual Circumstance" That Prevented Her from Complying with Walmart's Policy for Requesting Leave**

Kadribasic alleges in her appellate brief that Taylor did not expressly direct her to contact Sedgwick to request leave during conversations that allegedly occurred on October 28, October 29, November 6, and November 8, 2018. In her appellate brief, Kadribasic argues that this alleged omission by Taylor could be considered an "unusual circumstance" that prevented her from requesting leave under company policy, which by extension, relieved her of the obligation to comply with the policy pursuant to 29 C.F.R. § 825.303(c). The record lacks any support for this argument.

It is undisputed that Kadribasic was aware of Walmart's policy for requesting FMLA leave. Walmart trained Kadribasic on Walmart's policy regarding requesting FMLA leave. Kadribasic admitted that she knew that Sedgwick – not a Walmart supervisor – had to decide whether an employee was entitled to FMLA leave. In fact, Kadribasic had followed this same policy and been granted FMLA leave by Sedgwick just a few short months before Walmart ended her employment.

Kadribasic in fact contacted Sedgwick on November 9, 2018 to request leave as required by Walmart's policy, but she did so well *after* Walmart had decided to end her employment and after Taylor advised Munoz of her decision to terminate Kadribasic's employment and Munoz concurred with the decision during their 12:55

19

p.m. call that day. (Doc. 96-26, p. 2). This further proves that Kadribasic was aware of the policy's requirement that she contact Sedgwick to request FMLA leave. Therefore, whether Taylor expressly told Kadribasic in October or November 2018 that she needed to contact Sedgwick to request leave is irrelevant to Kadribasic's FMLA claim.

The regulations explain that "[u]nusual circumstances would include situations such as when an employee is unable to comply with the employer's policy that requests for leave be made by contacting a specific number because on the day the employee needs to provide notice of his or her need for leave there is no one to answer the call-in number and the voice mail box is full." 29 C.F.R. § 825.302(d).

Case law interpreting this regulation also sheds light on what can reasonably be considered "unusual circumstances" for purposes of 29 C.F.R. § 825.303(c). For example, in *Acker*, the plaintiff testified that he was too "dizzy" to follow GM's call-in procedure only on one of the dates he was absent from work, but he did not explain what "unusual circumstances" prevented him from following the call-in procedure on other days. The Fifth Circuit determined that there was no proof that unusual circumstances arising from his condition prevented him from complying with the call-in policy and held that the plaintiff failed to establish that he was entitled to FMLA leave as a result. *Acker*, 853 F.3d at 789–90.

20

Courts have also found that unusual circumstances exist when an employee is physically unable to comply with the employer's requirements or where "conflicting instructions" about procedures raised "genuine issue of fact as to whether this ambiguity would excuse" noncompliance. *See, e.g., Flores v. Murphy Co.*, No. 1:12-cv-2156-CL, 2014 WL 584553, at *6 (D. Or. Feb. 12, 2014) (finding sufficient evidence of unusual circumstance where employee could not comply with employer's call-in procedure because he was incarcerated and lacked phone access); *Uselton v. CSX Transp., Inc.*, No. 3:13-cv-349, 2014 WL 4388272, at *5 (N.D. Ohio Sept. 5, 2014) (finding that reasonable juror could apply unusual-circumstances exception where employer's procedure conflicted with special instructions from its employee-assistance program and thus "effectively mitigated [plaintiff]'s failure to provide [his employer] with notice").

In support of her argument, Kadribasic misplaces reliance on an unpublished decision issued by a district court in Arkansas. In *Ruark v. Arkansas Democrat-Gazette, Inc.*, No. 4:13-CV-00283-KGB, 2014 WL 1809606, at *6 (E.D. Ark. May 2, 2014) , the plaintiff notified his employer that he might need time off for surgery. Although he did not follow his company's procedure for notifying the company of his need for FMLA leave, the facts revealed that the employee was *unaware* that he could request FMLA leave and that the employer *never* notified him of his rights under the FMLA. *Id*. at *6.

21

The undisputed facts in this case lie in stark contrast to those in *Ruark*. There is no dispute that Kadribasic was aware of her right to request FMLA leave and the process for doing so. Months before her termination, Kadribasic had in fact followed the policy for a fourth time to successfully request FMLA leave for her maternity. Kadribasic had also contacted Sedgwick to request FMLA leave *but only after* Taylor had decided to end her employment and received approval to notify Kadribasic of the termination decision. It is also undisputed that when she met with Kadribasic to advise her of the termination, Taylor was not aware of Kadribasic submitting a request for FMLA leave to Sedgwick. (Doc. 97, pp. 157-158). In addition, Kadribasic has not identified any physical barriers to her complying with Walmart's policy or any confusion that existed regarding the procedure Kadribasic needed to follow to request leave.

Moreover, Kadribasic's newly fashioned argument that Taylor did not expressly direct her to contact Sedgwick to request leave when she mentioned taking PTO to "heal" her back injury could be considered an "unusual circumstance" that prevented her from contacting Sedgwick under company policy cannot be considered in this appeal because Plaintiff has never alleged that Taylor "prevented" her from contacting Sedgwick to request leave – not in her Complaint, in her deposition testimony, in her briefing on the parties' cross motions for summary judgment, or in her objections to the R&R. *See Walker v. Jones*, 10 F.3d 1569, 1572

(11th Cir. 1994) ("an issue not raised in the district court and raised for the first time in an appeal will not be considered.") (quoting *Depree v. Thomas*, 946 F.2d 784, 793 (11th Cir. 1991); *Irving v. Mazda Motor Corp.*, 136 F.3d 764, 769 (11th Cir. 1998) ("We cannot allow [a] [p]laintiff to argue a different case from the case she presenrted to the district court.")).

Kadribasic alleges that she was not given an opportunity to make the argument that Taylor not expressly directing her to comply with long-standing Walmart policy could be considered an "unusual circumstance" that prevented her from complying with the policy because the magistrate judge did not address 29 C.F.R. § 825.303 in the R&R. But this regulation has existed since January 2009 and its language is clear. Plaintiff had every opportunity to address the requirements of the regulation in her summary judgment briefs and objections to the R&R, especially given that Walmart cited 29 C.F.R. § 825.303 in its summary judgment briefing. (Doc. 132, pp. 17-18). Plaintiff cannot fashion a new theory of the case at this late stage, especially when such a theory relies on allegations that are directly refuted by the undisputed facts in the record. Kadribasic confirms in her deposition that she knew she had to submit a request for FMLA leave to Sedgwick and that no one with Walmart advised her differently or took any action to prevent her from submitting a request to Sedgwick. (Doc. 95, pp. 95-96, 137, 225-227, 329).

Kadribasic's allegation in her appellate brief that "unusual circumstances" prevented her from complying with Walmart's policy is directly refuted by the Record below. This point is made clear in the District Court's Order, which found that there was "an absence of any evidence showing unusual circumstances that prevented her from complying with that policy[.]" (Doc. 132, p. 20). Due to the absence of such evidence, the District Court correctly determined that Kadribasic was not entitled to FMLA leave at the time Walmart decided to terminate her employment.

### C.    Walmart Did Not Waive its Longstanding Policy for Requesting Leave

Kadribasic alleges that she was entitled to FMLA leave at the time Walmart decided to end her employment because her conversations with Taylor about potentially taking PTO to "heal" her back were sufficient to put Walmart on notice of her desire or need to take FMLA leave and Walmart waived its requirement that she contact Sedgwick to request leave. She further alleges that Judge Grimberg erred by granting summary judgment to Walmart pursuant to 29 C.F.R. § 825.303 without considering whether Walmart waived its requirement that employees contact Sedgwick to request FMLA leave pursuant to 29 C.F.R. § 825.304(e). This argument is meritless and should be rejected.

29 C.F.R. § 825.304(e) provides that "[a]n employer may waive employees' FMLA notice obligations or the employer's own internal rules on leave notice

requirements." Kadribasic's own admissions establish that Walmart did not "waive" its policy for requesting leave. Kadribasic has conceded that she knew only Sedgwick – not Taylor – could grant a request for FMLA leave. It is also undisputed that Kadribasic had successfully made use of Walmart's policy months before her termination. (Doc. 95, pp. 95-96, 137, 225-227).

Kadribasic does not allege that anyone at Walmart indicated to her between October 28 and November 9, 2018 that she had been granted leave, nor that she need not comply with Walmart's policy for requesting leave. The fact that Kadribasic complied with Walmart's policy for requesting leave by contacting Sedgwick on November 9, 2018 further establishes that there was no waiver of Walmart's policy. Kadribasic contacted Sedgwick on November 9, 2018 to request leave as required by Walmart's policy, but well *after* Taylor decided to terminate Kadribasic's employment and after Taylor discussed this decision with Munoz during their 12:55 p.m. call and he communicated to her that he concurred with the decision. (Doc. 96-26, p. 2)

29 C.F.R. § 825.304 further provides that "[i]f an employer does not waive the employee's obligations under its internal leave rules, the employer may take appropriate action under its internal rules and procedures for failure to follow its usual and customary notification rules, absent unusual circumstances, as long as the actions are taken in a manner that does not discriminate against employees taking

FMLA leave and the rules are not inconsistent with § 825.303(a)." 29 C.F.R. § 825.304(e).

As discussed in detail above, 29 C.F.R. § 825.303's requirement that an employee comply with the employer's policy for requesting leave in order to be entitled to leave is clear and nothing in the record below supports the argument that Judge Grimberg should have considered other FMLA-implementing regulations that are inapplicable to the facts and issues in this case. Thus, Kadribasic's allegation that she was entitled to FMLA leave because Walmart waived its policy is meritless and should be disregarded by this Court.

### D. Walmart Did Not Interfere with Any Right Kadribasic May Have Had Under the FMLA Because its Decision to Terminate Her Employment was Not Related to Any Alleged Request for Leave.

As explained above, to prevail on her FMLA interference claim, Kadribasic must establish that she was entitled to the disputed leave, which she has not done and cannot do, and that Walmart denied or otherwise interfered with her substantive rights under the FMLA. *Strickland,* 239 F.3d at 1206-07 (11th Cir. 2001). Therefore, even if Kadribasic could establish that she was entitled to FMLA leave, her claim would still fail as a matter of law because she cannot establish that Walmart's actions constituted interference with her rights as her employment was terminated for poor job performance.

This Court has held that "[t]he right to commence FMLA leave is not absolute, and that an employee can be dismissed, preventing her from exercising her right to commence FMLA leave, without thereby violating the FMLA, if the employee would have been dismissed regardless of any request for FMLA leave." *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1236 (11th Cir. 2010).

The record below establishes that at the time of the decision to terminate Kadribasic's employment (no later than 12:55 p.m. on November 9, 2018), Kadribasic had not submitted a request for FMLA leave to Sedgwick. (Doc. 96-26, p. 2). This alone establishes as a matter of law that a reason other than the request for FMLA leave was the basis for her termination. *Id.* at 1236 ("[U]nrebutted evidence that the decision maker was not aware, at the time of the decision to terminate [the plaintiff], of [the plaintiff's] request to commence FMLA leave establishes as a matter of law that [the plaintiff's] termination was for reasons other than her requested leave.").

There is also substantial evidence supporting the decision to terminate Kadribasic's employment, including her ongoing failure to comply with company policy, failure to adequately maintain and manage the Duluth Club, and her failure to prepare the Duluth Club for an important nationwide sales event despite express instructions for her to do so. Kadribasic received repeated coaching on her inadequate performance and, rather than try and improve her performance, she

27

abandoned her responsibilities and repeatedly sought to evade the disciplinary action she admittedly knew was imminent. (Doc. 95, p. 311).

As a result, under this Court's holding in *Pulte*, the District Court properly granted Walmart's summary judgment motion as to Kadribasic's FMLA interference claim because the record shows that Kadribasic's employment would have been terminated regardless of any request for leave. *See also Aponte v. Brown & Brown of Fla., Inc.*, 806 F. App'x 824, 832 (11th Cir. 2020) (finding that the district court did not err in determining that the defendant had proven its defense by showing – by a preponderance of the evidence – that it would have fired the plaintiff regardless of the plaintiff's request for FMLA leave).

The undisputed facts show that Taylor had no knowledge of Kadribasic submitting a request for leave to Sedgwick when she informed Kadribasic of Walmart's decision to end her employment. Those facts also show that Walmart would have ended her employment in any event because of her repeated poor job performance. For these reasons, the district court correctly found that Kadribasic's FMLA interference claim failed as a matter of law. That decision should be affirmed.

## V.    Conclusion

The District Court properly granted Walmart summary judgment on Kadribasic's FMLA claim because Kadribasic was not entitled to FMLA leave at the time Walmart decided to end her employment. Kadribasic had not complied with

Walmart's policy for requesting leave at the time the termination decision was made, and Kadribasic failed to establish that any unusual circumstance prevented her from complying with the internal policy. Additionally, Kadribasic cannot establish that Walmart interfered with her FMLA rights because the record supports that Kadribasic's employment was terminated for poor performance, and not to interfere with any rights she might have had under the FMLA. For these reasons, this Court should **AFFIRM** the District Court's Order granting Walmart summary judgment on Plaintiff's FMLA claim.

Respectfully submitted this 21st day of March, 2022.

*s/Elissa B. Haynes*
Elissa B. Haynes
Georgia Bar No. 804466
HaynesE@deflaw.com
Meredith R. Guerrero
Georgia Bar No. 214274
MGuerrero@deflaw.com

*Counsel for Appellee Walmart, Inc.*

DREW ECKL & FARNHAM, LLP
303 Peachtree Street, NE, Suite 3500
Atlanta, GA 30308
Telephone: (404) 885-1400
Facsimile: (404) 876-0992

## <u>Certificate of Compliance</u>

1.    This document complies with the word limit of Fed. R. App. P. 32(A)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6674 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14 pt. font and Times New Roman type style.

Respectfully submitted this 21st day of March, 2022.

*s/Elissa B. Haynes*
Elissa B. Haynes
Georgia Bar No. 804466
HaynesE@deflaw.com
Meredith R. Guerrero
Georgia Bar No. 214274
MGuerrero@deflaw.com

*Counsel for Appellee Walmart, Inc.*

DREW ECKL & FARNHAM, LLP
303 Peachtree Street, NE, Suite 3500
Atlanta, GA 30308
Telephone: (404) 885-1400
Facsimile: (404) 876-0992

xxx

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 21, 2022, I electronically filed the within and foregoing ***Brief of Appellee*** with the Clerk of Court using the CM/ECF filing system which will automatically send email notification of such filing to counsel of record.

This 21st day of March, 2022.

*s/Elissa B. Haynes*
Elissa B. Haynes
Georgia Bar No. 804466
HaynesE@deflaw.com
Meredith R. Guerrero
Georgia Bar No. 214274
MGuerrero@deflaw.com

*Counsel for Defendant / Appellee*

DREW ECKL & FARNHAM, LLP
303 Peachtree Street, NE, Suite 3500
Atlanta, GA 30308
Telephone: (404) 885-1400
Facsimile: (404) 876-0992